Argued January 14, affirmed January 27, 1960

# JENKINS *v.* JENKINS
348 P. 2d 1108

*Nicholas Zumas*, Portland, argued the cause for appellant. On the briefs were Koerner, Young, McColloch & Dezendorf and Lewis K. Scott, Portland.

*Philip A. Levin*, Portland, argued the cause for respondent. With him on the brief was Janet W. Starkey, Portland.

Before McAllister, Chief Justice, and Warner, Sloan and Duncan, Justices.

WARNER, J.

The plaintiff, E. Eileen Jenkins (now Mrs. Clarence O. Wright), made application for a modification of a decree of divorce entered in June, 1956, with respect to the custody of three of the four minor children of the parties, who were then awarded to their father. From a denial of her petition, she appeals.

There is no serious controversy over the facts and

there are only a few propositions of law which merit attention.

The initial custodial arrangement was made pursuant to the wishes of both parties as it was reflected in their property settlement agreement and approved by the court at the time of the divorce. When plaintiff filed her application for modification the ages of the children in the defendant-respondent's custody were as follows: Michael, a boy, nine years old; Stephen R., a boy, eight years old; and Victoria Louise, a girl, six years old. Carol Ann, the child given to plaintiff-appellant, was at that time four years old.

Because of a serious asthmatic condition, the daughter Victoria Louise has been permitted to live in California with the defendant's brother and his wife. This arrangement was in accord with the wishes of both parties and the excellent adjustment made by this child reflects the wisdom of their judgment. It is the considered opinion of her attending doctors that it might seriously jeopardize the health of this little girl if she is moved to a different climate or environment, particularly to Alaska.

The two boys have since the divorce decree been living in Portland, Oregon, with their father, who is a respected and regular employee of the Pacific Fruit and Produce Co. He makes his home with his mother and adult sister. No question was raised in regard to the manner in which the defendant has been caring for the boys, nor has his fitness as their custodian been challenged. Indeed, plaintiff gives her former husband an eloquent voucher in this respect, testifying: "I have no objection to him as a father. He has been a perfect father." The striking progress made by the boys in school, in social integration and in habits of personal appearance and cleanliness since they have

been under his control manifest his paternal devotion and care and fortify the foregoing attestation, voluntarily given by plaintiff.

Plaintiff's claim for a change in custody rests solely upon the representations that since the divorce she has regained her health, has since remarried, and is in a position, with the aid of her new husband, to provide a home for all four of the children.

It appears that at the time of the divorce and for awhile thereafter, plaintiff was suffering from the after effects of several serious major operations. In the meantime, it is evident that she made a recovery and at the time of the hearing in this matter was enjoying good health.

We also find plaintiff is now married to Clarence O. Wright, a staff sergeant in and career member of the U. S. Air Force, who was scheduled to leave shortly after the hearing for a three-year tour of duty at Anchorage, Alaska. It is there the plaintiff proposes to remove the children and reside in quarters supplied by the Armed Services at an unknown but later date.

We have no occasion to gainsay the good reputation of Mr. Wright but cannot forbear observing that a serious question arises as to the situs and desirability of such an arrangement for children of such tender years. It cannot be seriously argued that no grave risks to their health and happiness would be involved if they were to be plucked from the benign climates and satisfactory environments to which they are now accustomed and thrust into the rigorous climate and vicissitudes of the proposed new location. Moreover, as long as they are a part of any army family they would always be confronted with the possibility of moving from one military installation

to another, thereby creating a condition bespeaking an almost certain termination of any further relationship of substance with their father.

The plaintiff calls our attention to the following phrase in the order from which she appeals: "that while the changed conditions are favorable to the plaintiff, the custody of the children remaining with the defendant is not adverse to the welfare of said children * * * and, therefore, the plaintiff's application for modification of custody * * * is denied." By emphasizing the words "the changed conditions are favorable to the plaintiff" she argues that this, in substance, is an express finding of changed conditions justifying the assumption by the mother of the status of custodian and contradicts the conclusion reflected in the order denying the modification requested. Our reading of that part of the decree does not reach the conclusion entertained by plaintiff. We think the true meaning is that changed conditions "favorable to plaintiff" are those reflected by her improved health and the present enjoyment of a home and way of life with her new husband. But these changes since the divorce are not enough alone to compel a change in custody, particularly in view of the court's further finding that the continued custody of the children by the father "is not adverse to the welfare of said children."

In matters effecting the custody of children the paramount consideration has ever been the welfare of the child. It is an equally settled rule that such decrees are final and will not be modified unless changed conditions are shown indicating to the satisfaction of the court that the modification proposed would be in the best interest of the child. The party seeking the change is under the burden of demonstrating that the other party has since become unfit

to be the custodian or that the conditions which warranted the prior designation have deteriorated in a manner and to such a degree as to have an adverse effect on the child's welfare or, at least, that the proposed change in custody would result in the child receiving better care under more favorable conditions than he is receiving from the other. *Leverich v. Leverich,* 175 Or 174, 180-1, 152 P2d 303, and cases there cited.

Plaintiff represents that the trial court gave to *Bogh v. Lumbattis,* 203 Or 298, 300, 280 P2d 398, a construction it followed and which in effect emphasized the want of adverse conditions prevailing under the father's custody and as a finding precluded consideration of better welfare for the children which she represented would flow if given into her custody. We do not gather from the record that such a construction on the part of the trial judge can be implied. Certainly, it was not the intent of this court in Bogh to lay down a rule that was at odds in any respect with the established rules above referred to or to limit the trial court in giving consideration to any factor other than the welfare of the child in custody matters. A reading of the facts recited in Bogh gives confirmation to this conclusion.

The burden of showing a change in circumstances and conditions since the entry of the divorce decree warranting a modification was upon the plaintiff-appellant. This she has failed to sustain. The only showing that she has made was improvement in her health, her remarriage, and that her new husband offers her and her children a home at an army installation in Anchorage, Alaska, when family quarters there can be obtained, and then only for a period not exceeding three years. She has made no attempt to

show that the children's father was in any respect incompetent to care for them or the conditions and circumstances under which the children were living were adverse to their welfare. To the contrary, as we have noticed, she extolled the defendant as "a perfect father." "Mere improvement in financial or other material circumstances of the party denied custody of the child is not sufficient in itself to justify a change." *Leverich v. Leverich,* supra (175 Or at 180); *Sachs v. Sachs,* 145 Or 23, 31, 25 P2d 159, 26 P2d 780.

■ We are of the opinion in an appeal involving a modification of decree of custody like the one at bar, where the matter is primarily one of fact, requiring the trial judge to exercise sound discretion, we should give his findings and conclusions great weight and for the reasons expressed in *Ruch v. Ruch,* 183 Or 240, 192 P2d 272, where we said, at p 244:

> "A modification of a divorce decree with respect to the custody of a minor child is a matter resting largely in the sound discretion of the trial court. This broad discretion is vested in the trial court because the judge who sees the witnesses and the parties and hears the testimony is in a better position than the appellate court, which has only the cold record before it, to weigh the evidence and determine what disposition of the care and custody of the child will best promote its welfare. * * *"

In our opinion there is substantial evidence to support the finding of the able judge who presided at the hearing and whose judgments are fortified by many years of experience in the area of domestic relations and problems relating to the welfare of children. No abuse of judical discretion is evident in the record before us.

The order denying modification is affirmed. The parties will pay their own costs.